**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

QUINCY GRAY MCMICHAEL LEWIS

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:13-cv-13110

WEST VIRGINIA SUPREME COURT OF APPEALS,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The plaintiff in this case disagrees with a decision by the Supreme Court of Appeals of West Virginia ("SCAWV") and asks this court to declare that decision unconstitutional and enjoin its enforcement. But the plaintiff cannot sue the SCAWV or its justices because the plaintiff disagrees with its decision. If the plaintiff disagrees with a SCAWV decision, she may file a petition for a writ of certiorari with the United States Supreme Court. She did that. Accordingly, for bringing this lawsuit when it is clearly barred by the Eleventh Amendment to the United States Constitution, and for the reasons set forth in this opinion, the plaintiff's counsel, Wendy J. Murphy, is **SANCTIONED** in the amount of $450, with payment to be made to the court within sixty (60) days of this Order.

**I.  Background**

In this case, the plaintiff seeks to challenge *State ex rel. J.W. v. Knight*, 223 S.E.2d 617 (W. Va. 2009), where the SCAWV upheld a court-ordered gynecological examination of the alleged victim in a criminal sexual assault case. The plaintiff, who was not a party to that case, brought the

instant action against the SCAWV "in its official capacity only" to enjoin enforcement of *State ex rel. J.W. v. Knight*. (*See* Class Action Compl. and Demand for Equitable Relief ("Compl.") [Docket 1], at 3, 13). The plaintiff further sought a declaratory judgment holding *State ex rel. J.W. v. Knight* unconstitutional. (*Id.* at 13). On October 21, 2013, I determined that the plaintiff's suit was barred by the Eleventh Amendment and accordingly dismissed it. (*See* Mem. Op. & Order [Docket 17]). I further ordered the plaintiff's counsel to show cause why they should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure for bringing this lawsuit. (*See id.*).

To adequately explain my decision to sanction the plaintiff's counsel, I will describe the SCAWV decision at issue. I will also describe the plaintiff's counsel's litigation strategy challenging that decision in this court.

### A.  *State ex rel. J.W. v. Knight*

In *State ex rel. J.W. v. Knight*, two brothers were charged with various acts of sexual abuse against their sister, J.W., a fifteen year-old minor. 223 S.E.2d 617, 618 (W. Va. 2009). One of the brothers, Jason Wilson, moved the trial court for a physical examination of J.W. to determine whether any physical penetration or intercourse had occurred. *Id.* at 619. In deciding Jason Wilson's motion, the trial court applied the six-part test set out in *State v. Delaney*, 417 S.E.2d 903 (W. Va. 1992). That test enumerated the factors a trial court must consider before ordering a physical or psychological examination against a victim in a criminal case:

> [T]he judge should consider (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

2

*Id.* at 907. The trial court ultimately granted Jason Wilson's motion after applying the *Delaney* test. *State ex rel. J.W.*, 223 S.E.2d at 619. The trial court found that the gynecological examination sought was not overly intrusive given J.W.'s age and the fact that the examination was less extensive than those administered to women in the general population for health purposes. *Id.* at 619, 621. The trial court also found that the evidence sought by Jason Wilson was not otherwise available and that the examination was not too remote in time from the alleged abuse. *Id.* at 621.

After the trial court ordered J.W. to undergo the physical examination, the state prosecutor sought a writ of prohibition from the SCAWV to prevent the examination from going forward. *Id.* at 618. The *only* issue the SCAWV considered was whether the trial court had applied the *Delaney* test correctly. *Id.* at 618. On that issue, the SCAWV held that the trial court had properly applied the *Delaney* test "under the facts of this particular case." *Id.* at 622. The court did not consider any federal constitutional issues.

Following the SCAWV decision, J.W., through counsel Wendy J. Murphy, sought a writ of certiorari to the United States Supreme Court. Her petition stated the following two issues:

> I. Whether it violates the Supremacy Clause for a state court to order a minor rape victim to submit to a penetrating pelvic examination, where the court lacks constitutional authority to issue such an order and the minor victim has a federal constitutional right to refuse to submit?

> II. Whether it violates the Due Process Clause for a state court to order a child rape victim to submit to a penetrating pelvic examination at the behest of a criminal defendant?

Petition for a Writ of Certiorari, *J.W. v. Knight*, 2009 WL 2491812 (No. 09-131). The petition was denied on October 20, 2009. *See J.W. v. Knight*, 558 U.S. 970 (2009).

In November 2009, after denial of the petition for writ of certiorari, J.W., again through counsel Wendy J. Murphy, filed a new federal lawsuit in this court to enjoin enforcement of the

original trial court order. That suit was dismissed as moot after the criminal defendant, Jason Wilson, pleaded guilty. J.W. appealed the dismissal to the Fourth Circuit. While that appeal was pending, the defendant withdrew his guilty plea in the underlying criminal action and the Fourth Circuit remanded the case. On remand, the suit was again dismissed as moot after it was revealed that J.W. had voluntarily undergone the disputed physical examination. *See J.W. v. Knight*, No. 1:09-CV-01277, 2011 WL 1137341 (S.D.W. Va. Mar. 24, 2011), *aff'd*, 452 F. App'x 411 (4th Cir. 2011).

### B.   The Instant Case

The instant case was brought by plaintiff Quincy Gray McMichael Lewis, a twenty-seven-year-old female resident of West Virginia. (Compl. [Docket 1], ¶ 21). The plaintiff, however, is not the subject of any court-ordered physical examination. Rather, she purported to bring a class action "for herself and on behalf of a class of . . . [a]ll natural persons residing in West Virginia that are at risk for sexual victimization[.]" (*Id.*). This class arguably would include every person living in the state of West Virginia. The Complaint alleges several constitutional violations based on the "ongoing vitality" of *J.W.* (*Id.* ¶¶ 31-49).

The SCAWV moved to dismiss. I granted the defendant's motion on the basis that this court lacked subject matter jurisdiction under the Eleventh Amendment. (*See* Mem. Op. & Order [Docket 17]). Because I found that the Eleventh Amendment clearly barred this suit, I ordered the plaintiff's counsel to submit a memorandum explaining why the plaintiff's "claims . . . and other contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

The memorandum filed in response to my Order [Docket 19] was submitted by only Wendy J. Murphy, and was not joined by the other attorneys representing the plaintiff in this case.

4

This memorandum uses a first person narrative to describe Ms. Murphy's credentials and her personal motivations for filing this lawsuit. Additionally, the memorandum attached a letter from a former judge, who discusses Ms. Murphy specifically. The other two attorneys representing the plaintiff did not respond to my Order. Although Rule 11 would allow me to sanction each of the attorneys who represented the plaintiff in this case, Ms. Murphy's memorandum indicates that the substance of the Complaint and response to the motion to dismiss in this case were handled solely by Ms. Murphy. For this reason, only Ms. Murphy is sanctioned.

## II. Legal Standard for Rule 11 Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, lawyers certify that the legal contentions they make "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2). In the Fourth Circuit, "[a]n assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (internal quotations omitted). However, merely "asserting a losing legal position . . . is not of itself sanctionable conduct." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002). According to the Advisory Committee Notes to Rule 11, "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether" the rule has been violated. Fed. R. Civ. P. 11 advisory committee note to 1993 Amendments.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction" on the attorneys who

violated the rule. Fed. R. Civ. P. 11(c)(1). But because a sua sponte show cause order deprives a lawyer of the Rule 11's safe-harbor provisions, "a court is obliged to use extra care in imposing sanctions on offending lawyers." *Hunter*, 281 F.3d at 151. "Courts generally should reserve such sanctions for situations that are akin to a contempt of court." *In re Bees*, 562 F.3d 284, 287 (4th Cir. 2009) (internal quotations omitted). Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### III. Analysis

Every aspect of this case has been riddled with inaccuracies, misrepresentations, and distortions by Ms. Murphy. The action was filed against the "West Virginia Supreme Court of Appeals," although the correct name of the court is the Supreme Court of Appeals of West Virginia. (*See* Compl. [Docket 1]). The Complaint refers to this court as the "United States District Court for the District of West Virginia," apparently failing to realize that the state of West Virginia has two federal districts. (*Id.*). Ms. Murphy, who is admitted to practice law in Massachusetts, did not file a Statement of Visiting Attorney or pay the Visiting Attorney fee to appear *pro hac vice*, as required by Local Rule 83.6. The entire premise of the Complaint in this case was based upon a blatant distortion of the SCAWV's opinion in *State ex rel. J.W. v. Knight*, 223 S.E.2d 617 (W. Va. 2009). And a case against the SCAWV is clearly barred by the Eleventh Amendment.

The Complaint contends that *J.W.* "authorize[s] state criminal courts to order private third-party victims in criminal sexual violence matters to submit to non-consensual penetrating pelvic examinations," and that "[the] ruling is broadly applicable to adult and child victims and presumably also authorizes forced examinations of male victims' anal cavities." (Compl. [Docket 1], ¶ 1). The Complaint continues, "[i]f *J.W.* is not enjoined from enforcement, victims of

6

penetrating sexual crimes in West Virginia will be forced to submit to forcible sexual penetration by court order, or forced to choose between submission and sanctions for non-compliance, such as contempt of court, suppression of evidence, dismissal of charges and/or a jury instruction undermining the victim's credibility for noncompliance." (*Id.* ¶ 15).

This characterization of *J.W.* is simply incorrect. *J.W.* made no general authorizations to state criminal courts, is not broadly applicable, and did not create any new law regarding when victims may be required to submit to court-ordered gynecological examinations. Rather, the only holding by the court in *J.W.* was that "under the facts of this particular case," the trial court properly applied the six-factor test set forth in *State v. Delaney*, 417 S.E.2d 903 (W. Va. 1992) regarding when a gynecological examination may be ordered. 679 S.E.2d at 622. The SCAWV did not address the constitutionality of such an examination. *See id.* at 620. Furthermore, the *J.W.* decision was a per curium opinion, and its precedential value is thus limited to only the particular facts before the court in that case. *See Walker v. Doe*, 558 S.E.2d 290, 291 (W. Va. 2001) ("The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases.").

Although the defendant raised a number of jurisdictional defenses in its motion to dismiss, I addressed only the immunity defense under the Eleventh Amendment. I found that the Eleventh Amendment clearly barred the plaintiff's suit, and I accordingly ordered the plaintiff's counsel to show cause why they should not be sanctioned. I will therefore explain why the Eleventh Amendment bars the plaintiff's suit and why the plaintiff has failed to convince me that sanctions are not appropriate in this case.

7

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits against unconsenting states brought in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) ("This Court has drawn upon principles of sovereign immunity to construe the Amendment to establish that an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (internal quotations omitted)).

In addition to prohibiting suits against states themselves, the Eleventh Amendment also prohibits suits against state entities. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). It is completely established that state supreme courts are considered state entities for purposes of the Eleventh Amendment. *See, e.g.*, *Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 731-32 (7th Cir. 1994), *cert. denied*, 513 U.S. 811 (suit to enjoin Illinois Supreme Court from violating Due Process Clause barred by Eleventh Amendment); *Robinson v. Court of Common Pleas of Phila. Cnty.*, 827 F. Supp. 1210, 1211 (E.D. Pa. 1993) ("There is no doubt that a state's highest court is an Eleventh Amendment state entity."); *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568, 1575-76 (N.D. Ga. 1992) (holding that suit against the State Bar of Georgia was barred by the Eleventh Amendment because the state bar is an arm of the Georgia Supreme Court, which is an arm of the State of Georgia); *Russillo v. Scarborough*, 727 F. Supp. 1402, 1409 (D.N.M. 1989) (Supreme Court of New Mexico is a state agency immune from suit under the Eleventh Amendment); *Arthur v. Supreme Court of Iowa*, 709 F. Supp. 157, 159 (S.D. Iowa 1989) (Supreme Court of Iowa immune from suit under Eleventh Amendment); *Richards v.*

8

*State of New York.*, 597 F. Supp. 692, 693 (E.D.N.Y. 1984) (State of New York and its Court of Appeals immune under Eleventh Amendment); *Louis v. Supreme Court of Nevada*, 490 F. Supp. 1174, 1180 (D. Nev. 1980) ("The Supreme Court of Nevada is an agency of the State of Nevada and immune from suit under the Eleventh Amendment to the U.S. Constitution.").

Notwithstanding the numerous cases uniformly applying Eleventh Amendment immunity to state supreme courts, Ms. Murphy persists in arguing that the *Ex parte Young* exception permits her suit. The *Ex parte Young* doctrine is a narrow exception to the Eleventh Amendment that allows federal courts to entertain suits "challenging the constitutionality of a state official's action[.]" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). The doctrine

> rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest[.]

*Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (internal quotation marks omitted). The *Ex parte Young* exception does not apply here. The plaintiff sued the Supreme Court of Appeals of West Virginia "in its official capacity only." (Compl. [Docket 1], ¶ 5). The plaintiff did not sue any state officers. *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (The *Ex parte Young* doctrine "permits a federal court to issue prospective, injunctive relief against a *state officer* to prevent ongoing violations of federal law[.]"(emphasis added)). Ms. Murphy also did not attempt to enjoin the constitutionality of a state official's action. Plainly, *Ex parte Young* is inapplicable to this case.

Ms. Murphy's argument that the *Ex parte Young* exception applies to this suit because Ms. Murphy could have named the individual justices rather than the SCAWV is also indisputably without merit. *Ex parte Young* "does not mean that a plaintiff may avoid the Eleventh Amendment

simply by suing an individual officer for prospective relief." 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3524.3, at 380 (3d ed. 2008). In this case, Ms. Murphy was not attempting to enjoin individual state officials from engaging in illegal conduct—she was attempting to use the United States District Court as a means to appeal a decision from the highest court in this state. Contrary to Ms. Murphy's assertions, changing the style of this case to include the individual justices of the SCAWV would not change its outcome—one cannot sue either the SCAWV or its justices merely because she believes their ruling is incorrect. This course of action runs contrary to the notions of federalism that are the backbone of our constitutional system.

The proper avenue for an appeal of a decision from the SCAWV is not federal district court—it is a petition for a writ of certiorari to the United States Supreme Court. Ms. Murphy knows this. In fact, Ms. Murphy filed a petition for a writ of certiorari to the Supreme Court following the decision in *J.W. See* Petition for Writ of Certiorari, *J.W. v. Knight*, 2009 WL 2491812 (No. 09-191). As the Supreme Court has explicitly stated, "a United States District Court has no authority to review a final judgment of a state court in judicial proceedings. Review of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

Strangely, counsel attaches to her memorandum a sworn letter authored by former District Judge Paul G. Cassell. In this letter, Judge Cassell states that Ms. Murphy consulted with him prior to filing this case. Although consultation with other attorneys may be a defense to potential sanctions, an attorney facing sanctions is nonetheless obligated to present a case that has *some* chance of success under existing precedent. *See* Fed. R. Civ. P. 11; *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) ("A legal argument fails to satisfy Rule 11(b)(2) when in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like

circumstances could not have believed his actions to be legally justified. The legal argument must have absolutely no chance of success under the existing precedent to contravene the rule.") (internal citations omitted); *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990) ("A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.") (internal citations omitted). Nothing in the record indicates that Ms. Murphy relied upon any statement by Judge Cassell that gave her a reason to believe she had a chance of success in this case.

Further, Judge Cassell argues that Ms. Murphy should not be subject to sanctions because she was faced with a confusing body of law. (*See* Letter from Judge Cassell [Docket 19], at 3-4). The issues involved in this case were neither novel nor confusing. Judge Cassell offers nothing to support this surprising and clearly erroneous assertion. There is no confusion regarding whether a federal district court is the proper forum for an appeal from a state court of last resort. *See, e.g.*, *Feldman*, 460 U.S. at 482. As Judge Cassell notes, "Ms. Murphy understood her obligation to seek relief [following *J.W.*] was from the United States Supreme Court[.]" (*Id.* at 4). And while the SCAWV cited to twenty cases in its Motion to Dismiss where sovereign immunity was found to bar lawsuits against state courts of last resort, neither Judge Cassell nor Ms. Murphy have pointed to a single case—or even a dissent—or law review article suggesting this lawsuit could proceed. This case was not, as Judge Cassell claims, "unchartered [sic] terrain."

Additionally, Judge Cassell asserts that Ms. Murphy's filing this case against the SCAWV instead of the individual justices was a "more respectful framing of the case" than naming the justices individually. (*See* Letter from Judge Cassell [Docket 19], at 4-5). Apparently Ms. Murphy was apprehensive about naming the individual justices due to criticism she received in the media

11

following an unsuccessful case in Nebraska filed directly against a state court judge. (*See id.*). However, Ms. Murphy's concern for her public image is irrelevant to the legal issues before this court. Rather, the issue before this court is whether "a reasonable attorney in like circumstances" could have believed Ms. Murphy's actions were "legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998).

Both Ms. Murphy's memorandum and Judge Cassell's letter make much of Ms. Murphy's long history of advocating on behalf of crime victims. However, supporting a laudable cause does not permit an attorney to bring baseless claims or act with a callous disregard for the truth. Nor does it make a federal district court the appropriate place to appeal the decision of a state supreme court. We cannot upend traditional notions of federalism because a litigant's purpose is laudable.

Neither Ms. Murphy's memorandum nor Judge Cassell's letter establish any reasonable basis to conclude this lawsuit had any chance of success. A reasonable investigation into the merits of this case would have revealed that the doctrine of sovereign immunity barred a lawsuit in federal district court against the SCAWV. Where there is no room for argument, the door opens to sanctions. "Sanctions are warranted when a party exhibits a deliberate indifference to obvious facts," *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (internal quotation omitted), as Ms. Murphy has done in this court.

Ms. Murphy's distortions of the law and facts in this case are not only a violation of Rule 11. They are also likely violations of the American Bar Association's Model Rules of Professional Conduct and the West Virginia Rules of Professional Conduct. *See* Model Rules of Prof'l Conduct R. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith

argument for an extension, modification or reversal of existing law."); W. Va. Rules of Prof'l Conduct R. 3.1 (stating same).

The mistakes and misrepresentations in this case were not the inadvertent blunders of an inexperienced attorney. As noted by Ms. Murphy, she is an experienced litigator, and has been practicing law for decades. (*See* Pl.'s Mem. in Resp. to Court's Order [Docket 19], ¶¶ 1, 14). She has served as an assistant district attorney, taught courses at New England Law | Boston and Harvard Law School, and written a number of law review articles related to the rights of crime victims. (*See id.* ¶¶ 1-2). An attorney with these credentials certainly was capable of ascertaining what the *J.W.* case actually held, that she could not sue the state supreme court in federal district court simply because she disagreed with its decision, and that local rules must be followed when cases are filed.

As Ms. Murphy understands, "a litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the district court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendment. Nonetheless, after her case was dismissed and she was directed to explain why she should not be sanctioned, Ms. Murphy continued to distort the truth. She argued that "this Court has suggested that the rights of a victims [sic] subjected to such orders are protected because state court judges are required to apply a six-step process before ordering an examination in a particular case[.]" (Pl.'s Mem. in Resp. to Court's Order [Docket 19], ¶ 3). Particularly given her long history as a litigator, Ms. Murphy is certainly capable of understanding that my dismissal of this case under Federal Rule of Civil Procedure 12(b)(1) was based solely on

13

this court's lack of subject matter jurisdiction over her claim and does not relate to the merits of her constitutional challenge.

In sum, Ms. Murphy's conduct in this case includes: not knowing the correct name of the SCAWV when filing this lawsuit against them; not knowing the name of the court in which she was filing the Complaint; failing to follow procedures to appear *pro hac vice*; misconstruing the SCAWV's holding in *J.W.* as the basis for the Complaint and throughout her briefing; filing a lawsuit against an entity that is unequivocally immune to suit in federal court; and continuing to distort the truth even in the memorandum addressing why she should not be sanctioned. The plain lack of jurisdiction, the totality of the misrepresentations, and the disregard for the law exhibited by Ms. Murphy in this case compel my determination that sanctions are appropriate.

## IV. Conclusion

Based upon the foregoing, I **FIND** that Wendy J. Murphy is subject to sanctions pursuant to Rule 11. Therefore, Ms. Murphy is **SANCTIONED** in the amount of $450, with payment to be made to the court within sixty (60) days of this Order.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        December 5, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14